JAMES OLIVE, plaintiff in error, *vs.* ALEXANDER HERRINGTON, defendant in error.

1. When there is no evidence in the record that the errors complained of were committed by the Court below than that they were stated in the rule *nisi* which was refused by the presiding Judge, this Court cannot entertain jurisdiction of the case.

Suit on a promissory note, in Dougherty Superior Court. Tried before Judge ALLEN, at December Term 1860, and a motion for a new trial, decided by Judge R. H. CLARK, at the June Term, 1863.

This was an action brought by James Olive against Alexander Herrington, to recover the amount of a promissory note dated the 5th of September, 1853, due the 1st of January, 1854, given by defendant and payable to plaintiff, for $1,037.

The defendant filed a plea, very inartistically drawn, and setting forth the following facts, to-wit:

That defendant exchanged some lands which he owned in Decatur county for some lands (on which there was both a saw and grist-mill) which the plaintiff owned in the county of Worth; that the note was given as the difference in the value of the two places; that the mills constituted the chief inducement moving the defendant to the exchange; that the plaintiff represented the mill-dam as being slightly broken or parted, and that it could be easily mended; that plaintiff did agree to repair the dam and make it as good as it was before; that the plaintiff pretended to repair it, but did it in such a manner as that it broke again and rendered the mills worthless; and that these false representations and the promise of plaintiff to repair the dam, were the inducements to defendant to make the exchange and give the note sued on.

It appeared from the evidence adduced upon the trial of the case, that the defendant exchanged a tract of land in Decatur county for a tract of land in Worth county belonging to the plaintiff, on which there was a grist and saw-mill, and that the note sued on was given as the difference in value between the two tracts of land; that the plaintiff's land and mills were estimated by the parties at $6,000; that there was a break in the dam which the plaintiff represented as trifling, and which could be easily repaired at small expense; that plaintiff agreed to repair it, and thus make it as good as it was before it was broken; that the plaintiff represented the saw-mill as being capable of cutting from one thousand to twelve hundred feet of lumber per day, and that the grist-mill would grind eighty bushels of corn per day. It further appeared that the plaintiff pretended to repair the dam according to his undertaking, but did it so unskillfully that it broke again, and washed away the foundation of the mill-house and so injured the site as that the house had to be re-

moved and located in another place before it would answer any good purpose as a mill. It was also proved that the plaintiff said after the trade, that he considered that he had made the land he received in Decatur county clear; that the stream on the land in Worth county was valuable, if the water on it could be stopped, but he knew it could not be done; that the dam had been broken several times, and he had patched it up so that he could grind, but that he knew if a head of water was stopped on it, the dam would "burst all to shatters." Plaintiff also said to another witness that the mill was mended but would not stay mended a week, but it was sold and he was going to Decatur, and that the mill was merely "patched up;" that it could not be made to stand, the foundation not being good. The average damage to the mills, in consequence of the break, as estimated by the witnesses, was from $1,000 to $2,000.

There was a good deal of other testimony, but the material facts are embodied in the foregoing statement.

Upon this testimony the jury found for the defendant.

Counsel for plaintiff then moved for a new trial, and a rule *nisi* was granted on the following grounds, to-wit:

1. Because the Court erred in allowing witnesses to prove the damage sustained by defendant, without a detailed estimate as well as a statement of items making up the damage, the witnesses not being millwrights.

2. Because the Court erred in allowing some of the witnesses to give their opinion of the damages sustained by defendant, without giving the facts on which the opinions were founded, the witnesses not being millwrights.

3. Because the Court erred in charging the jury, at the request of defendant's counsel, "that if they believe that Olive went to Herrington before the consummation of the trade and told Herrington the mill was broken, and at the same time agreed with Herrington to put the mill in as good condition as it was before it was broken, and Herrington was thereby induced to complete the contract, then it was Olive's duty to do so; and if he failed to do it, he was not entitled to recover."

4th. Because the Court erred in charging the jury at the request of defendant, " that if Olive represented to Herrington that the mills would grind eighty bushels of corn per day, and saw one thousand feet of lumber per day, and that that was the inducement to the trade, then Herrington was entitled to the mills in accordance with that statement, and Olive was bound to deliver him such mills, and if he failed to do it, he was not entitled to recover."

5th. Because the Court erred in charging the jury as requested by defendant, "that if Olive stated to witnesses that he had agreed to mend the mill, and put it in as good condition as before it was broken and that he had failed to do so, and had merely 'patched it up,' then there was evidence from which fraud might be established on the part of Olive in the original transaction."

6th. Because the Court erred in refusing to charge the jury as follows, at the request of counsel for plaintiff, to-wit: " that the condition of the mill when the contract was made, and the statements then made by the plaintiff were the matters to be considered by the jury, and not what occurred afterwards when the writings were drawn up."

"In order to the defense of the defendant in this case on account of deceit and fraud, it must appear that any defects in the mill were known to Olive, and that his representations were made knowing them to be false at the time of the contract and not when the writings were drawn," the Court refusing to charge the words, "and not when the writings were drawn."

7th. Because the jury found contrary to the following charge of the Court, to-wit: " Fraud and deceit are not to be presumed but must be proved by the party alleging it, and to prove fraud and deceit the party charged with it must be proved to have known that his statements were false when they were made."

8th. Because the jury found contrary to law.

9th. Because the jury found contrary to evidence.

There were several other grounds taken in the motion for a new trial, but they had reference to leading questions in in-

Olive *vs.* Herrington.

terrogatories, and the answer to cross-interrogatories, and the interrogatories were not sent up with the record.

The presiding Judge refused the new trial and that decision is the error complained of.

L. P. D. Warren, for plaintiff in error.

P. J. Strozier, *contra.*

*By the Court.*—Lumpkin, C. J., delivering the opinion.

The answers to the interrogatories are unaccompanied by the questions propounded to the witnesses; whether, therefore, the questions be leading or the answers defective, we are left wholly without the means of judging.

There was a motion made for a new trial, and many of the grounds are for charges alleged to have been made for refusals to charge, and because the jury found contrary to the charges given, whereas it does not appear that any charge was given or refused by the Court. True, the fact is assumed in the rule *nisi*, and sundry decisions said to be made by the Court are therein recited. But his Honor, the presiding Judge, refused to make the rule absolute, nor does he any where certify to this Court that the grounds taken in the rule *nisi* are true; he overruled the motion because there was abundant evidence to sustain the verdict.

We do not sit here to discuss and decide abstract questions of law, but to investigate alleged errors committed by the Court below, and we must be assured upon the authority of the Court itself, what the errors complained of are, before we can be called upon to reverse them. Suppose we were to hold that upon some of the grounds taken in the rule *nisi*, there were fatal errors, which required the correction of this Court, his Honor might well reply, I have not certified to the Supreme Court that these errors, fatal in their opinion, were committed by me, our mouths would be closed.

In the brief of testimony appended to the bill of exceptions it did not appear that any objections were taken to the testimony as the trial progressed. This omission being dis-

covered, the plaintiff in error moved that the rule *nisi* be amended on the argument by stating that the testimony of which he complained was admitted against his objections. But it will be perceived that his motion to amend was confined entirely to this point, and did not extend to the equally fatal omission as to the charges.

We are restricted then in this case entirely to the first and second grounds taken in the rule *nisi*, and upon a careful examination of the evidence we hold that these grounds, vague and indefinite as they are, not specifying the names of the witnesses, are not well taken. To be more precise, it would be necessary to state the testimony of every witness, and show that it was not amenable to the complaint made against it. We shall be excused, I trust, from the tediousness of this detail.

We affirm the judgment of the Circuit Court.